## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EDMUND V. MADRID,

      *Plaintiff,*

v.                                                                No. CIV-04-138 MV/ACT

PHELPS DODGE CORPORATION,
JOHN CALLAHAN, and
CHINO MINES COMPANY,

      *Defendants.*

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment as to Plaintiff's Title VII Claims, (Doc. No. 48, filed September 12, 2005), and on Defendants' Motion for Summary Judgment as to Plaintiff's ERISA Claims, (Doc. No. 49, filed September 12, 2005). For the reasons stated below, the Court shall **GRANT** Defendants' Motions. Because the Parties have previously stipulated to dismissal with prejudice of the remaining counts of Plaintiff's Second Amended Complaint, (*See* Doc. No. 47, filed July 27, 2005), this action will be dismissed.

**Background**

Plaintiff's Second Amended Complaint, (Doc. No. 38, filed May 4, 2005), alleges the following facts relevant to his Title VII, 42 U.S.C. §§ 2000e, *et seq*., and Employment Retirement Income Security Act, ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, claims. Plaintiff, an Hispanic, was employed by Defendants Phelps Dodge and Chino Mines from 1965 until he was laid off in January 2002 when Defendants initiated a reduction in force. (*Id*. ¶¶ 12, 22, 57). During the course of his employment, Defendants discriminated against Plaintiff by assigning him to less favorable job assignments, failing to consider him for positions for which he was better qualified than other

candidates, speaking in a derogatory fashion to Plaintiff and making insulting comments based on Plaintiff's national origin, refusing to give Plaintiff benefits afforded non-Hispanic employees, forcing Plaintiff to surrender his legal rights in circumstances that worked a detriment to Plaintiff, and treating Plaintiff in a disparate manner from other non-Hispanic employees. (*Id.* ¶¶ 16-39, 58). Defendants engaged in these acts and failures to act because Plaintiff is Hispanic. (*Id.* ¶ 60). Plaintiff was an eligible participant for the benefits provided by the retirement plan administered by Defendants. (*Id.* ¶¶ 41-43). Defendants engaged in adverse treatment and wrongful interference with Plaintiff's retirement benefits by discriminating and retaliating against Plaintiff because Plaintiff made complaints of unlawful treatment to Defendants and governmental authorities, thereby violating ERISA. (*Id.* ¶¶ 45-51). Defendants' actions resulted in a denial of retirement benefits to Plaintiff. (*Id.* ¶ 53).

**Defendants' Motions**

On December 2, 2004, Defendants filed a motion for summary judgment, (Doc. No. 25), on the grounds that Plaintiff's claims are barred by the Agreement and General Release ("Release") he signed on November 26, 2002. Because Plaintiff subsequently filed a Second Amended Complaint, (Doc. No. 38, filed May 4, 2005), adding some claims, and because the Parties reopened discovery, the Court entered an order, (Doc. No. 42, filed May 19, 2005), denying the motion with leave to refile. In their Motions now before the Court, Defendants renew their argument that Plaintiff's claims are barred by the Release he signed, and rather than repeat their argument, they incorporate their previous argument by reference. (*See* Title VII Mem. in Support at 2, n.1, Doc. No. 51, filed September 12, 2005; ERISA Mem. in Support at 1, n.1, Doc. No. 50, filed September 12, 2005). Accordingly, citations in this Opinion to the Memorandum, the Response, and the Reply will refer to the briefs filed for the December 2, 2004, Motion for Summary Judgment, i.e. Doc. No. 26, filed

December 2, 2004; Doc. 32, filed January 3, 2005; and Doc. No. 34, filed January 20, 2005, respectively.

**Validity of Release**

Defendants ask that this case be dismissed because Plaintiff knowingly and voluntarily released all claims against Defendant arising out of his employment or the termination thereof. (*See* Doc. No. 25, filed December 2, 2004). After assessing the totality of the circumstances in this case, the Court concludes there are no genuine issues of material fact as to the validity of the Release and will grant Defendants' Motions for Summary Judgment.

Title VII employment discrimination and ERISA claims may be waived by agreement, but the waiver of such claims must be knowing and voluntary. *See Torrez v. Public Service Co. of New Mexico*, 908 F.2d 687, 690 (10th Cir. 1990); *see also Wright v. Southwestern Bell Telephone Co.*, 925 F.2d 1288, 1293 (10th Cir. 1991) (holding release not a knowing and voluntary waiver of right to sue employer under ERISA for future claims about which neither party knew). To determine the validity of a waiver of claims, the Court applies the "totality of the circumstances" approach in which it considers the following circumstances and conditions under which the release was signed: "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law." *Id*. at 689-690. The Court now considers each of these factors to assess

3

whether Plaintiff knowingly and voluntarily released all his claims against Defendants.

The Release executed by Plaintiff clearly, specifically and unambiguously released any claims Plaintiff had under Title VII or ERISA.  The preamble of the Release Agreement between Plaintiff and Defendant Chino Mines states that two of the purposes of the Agreement are to "resolve all matters relating to Employee's employment with, and separation from, the Company," and to "provide the Company with protection against any claims."  (Mem., Ex. B).  Paragraph 9 of the Release also states "Employee agrees not to bring any suit or claim against the Company . . . with respect to any matter, including those related to his employment with the Company or his separation from that employment . . . Employee . . . forever releases the Company . . . from any and all claims . . . past or present . . . The items released include . . . matters relating to or arising out of his employment or separation from employment.  Some examples of items released are claims under federal . . . laws, such as ... Title VII of the Civil Rights Act of 1964, as amended, [and] the Employee Retirement Income Security Act of 1974."  (Mem., Ex. B at ¶ 9).

Plaintiff's argument, that the Release language is not clear and specific, is not persuasive.  (*See* Resp. at 8-9).  Plaintiff claims that the "key Release language" is:

> This provision [referring to paragraph 9], of course, does not affect Employee's rights, if any to benefits under the Company's benefit plans in accordance with the terms of those plans, or to make a complaint to any state or federal agency with respect to issues related to his employment with the Company.

*Id*. at 8.

Plaintiff contends that this language, contained in the same paragraph where the general waiver of claims is described, is contradictory, ambiguous and confusing.  *Id.*  The Court disagrees.  The right to file a complaint to a state or federal agency and the right to file a lawsuit in court against an

employer are two distinct rights.  Plaintiff has not convinced the Court that the right to file an agency complaint suggests an exception to Plaintiff's agreement "not to bring any suit or claim against the Company."  Despite the clear and unambiguous language of the Release, the Court must consider the other factors in the totality of the circumstances analysis.

Plaintiff argues that he did not understand the most fundamental terms of the Release because he has only a high school education and no legal training.  (Resp. at 10).  There is no indication in the record, and Plaintiff does not allege, that his education and business experience are below average. *See Wright v. Southwestern Bell Telephone Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991) (plaintiff's waiver was knowing and voluntary where there was no indication his education and business experience were below average).  If anything, the record indicates Plaintiff's education and business experience are above average.  Plaintiff graduated from high school and attended Western New Mexico University for a year and a half.  (Mem., Ex. A at 9, lines12-14). Plaintiff took classes and passed certification tests for his job at the tailings dam at Chino Mines which required him to deal with federal and state regulations.  (Mem., Ex. A at 11-13).  Plaintiff held the position of  Contract Supervisor when he was laid off.   (Mem., Ex. C).

Plaintiff had sufficient time to review the Release before he signed it.  The Release states "[Plaintiff] has been given a period of at least 45 days to consider this Agreement."  (*See* Mem., Ex. B at ¶ 15).  Although he signed the Release the same day he received it, (Mem. in Support at 9; Resp. at 11), Plaintiff testified in his deposition that he understood that he could have 45 days to consider the Release.  (*See* Mem., Ex. A at 140, lines 3-5).  The Court notes that after testifying that he understood he could have 45 days to consider the Release, Plaintiff later, in response to a leading question from his attorney, contradicted himself and testified that he did not have 45 days to consider

the Release.  (Mem., Ex. A at 197, line 18 through198, line 2).  The Court will sustain Defendants'

counsel's objection to the leading question.  *See* Fed. R. Evid. 611(c) ("Leading questions should not

be used on the direct examination of a witness except as may be necessary to develop the witness'

testimony.").

Plaintiff points to two letters from Defendants to Plaintiff to show that Plaintiff did not have

45 days to consider the Release.  The first letter, dated November 8, 2002, (Mem., Ex. H), states that

should Plaintiff choose to participate in the early retirement process, he must schedule a day between

November 18 and November 27 to receive his retirement packet in order to retire effective December

1, 2002.  (*Id*.)  The letter also stated that if Plaintiff could not return to Chino Mines during that

period, Defendants would attempt to accommodate his needs by selecting another date.  (*Id*.).  The

second letter, dated November 19, 2002, purportedly enclosed the Release and asked Plaintiff to

return the Release by November 27, 2002.  (Mem., Ex. I).  Neither letter imposed an absolute

deadline for Plaintiff to sign the Release or reduced the 45-day period for Plaintiff to consider the

Release.  In addition, the Release gave Plaintiff seven days after signing to revoke the Release and

Plaintiff did not do so.  (Mem. Ex. A at 144, lines 3-19).

Plaintiff should have known his rights upon execution of the release.  As discussed above, not

only did the Release unambiguously indicate that Plaintiff intended to waive all legal claims against

Defendants, it specifically mentioned that claims under Title VII and ERISA were being released.

Plaintiff was sufficiently intelligent to understand that the language "Employee agrees not to bring

any suit or claim against the Company" meant all legal claims, including claims brought under Title

VII and ERISA.  *See Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 461-463 (9th Cir. 1989)

(language in agreement that settlement would represent "a full and final settlement of any and all

6

claims" arising out of his employment unambiguously indicates that plaintiff intended to waive all legal claims against employer, including those then pending before the EEOC). Although Plaintiff testified that he understood signing the Release would not affect his right to bring this lawsuit, (Resp. at 4, ¶ 10), his subjective belief, without more, is insufficient to defeat summary judgment. *See Jinzo v. City of Albuquerque*, 185 F.3d 874, *2 (10th Cir. 1999) (unpub. op.) (conclusory statement in deposition testimony that employee did not understand agreement settling claims against City is insufficient to withstand summary judgment); *Cirillo v. Arco Chemical Co.*, 862 F.2d 448, 454 (3d Cir. 1988) (misguided subjective belief that release did not address claims, without more, is insufficient to defeat summary judgment in the face of clear and unambiguous language; a contrary conclusion would undermine the utility of the voluntary settlement process); *Pilon v. University of Minnesota*, 710 F.2d 466, 468 (8th Cir. 1983) (summary judgment upheld despite employee's subjective belief that unambiguous release did not bar certain Title VII claims).

Plaintiff argues that his waiver was not knowing because he was not encouraged to seek counsel. (Resp. at 13-14). Plaintiff testified that his employer did not advise him to talk to a lawyer. (*See* Mem. at 11). Defendants present no evidence that Plaintiff was encouraged to seek, or in fact received benefit of counsel. (*See* Mem. at 11; Reply at 6-7). Plaintiff cites three cases for the proposition that even though a waiver states that the employee had been advised to consult an attorney, the waiver is not valid unless the employee is actually advised to consult with an attorney prior to executing the waiver. *See Kruchowski v. The Weyerhaeuser Co.*, 423 F.3d 1139 (10th Cir. 2005); *Thiessen v. General Electric Capital Corp.*, 232 F.Supp.2d 1230, 1239 (D. Kan. 2002); *Cole v. Gaming Entertainment*, 199 F.Supp.2d 208, 214 (D. Del. 2002). However, each of those cases address claims under the Age Discrimination in Employment Act which specifically provides that a

7

waiver may not be considered knowing and voluntary unless "the individual is advised in writing to consult with an attorney prior to executing the [waiver]." *See Id.*; 29 U.S.C. 626(f)(1)(E). Plaintiff cites no similar statutory requirement for waivers of claims under Title VII or ERISA. Plaintiff testified that he knew he had the right to consult an attorney regarding the Release. (Mem., Ex. A at 139, line 5 through 140, line 2); *see also Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 463 (9th Cir. 1989) (holding that release was a deliberate and informed waiver where plaintiff did not have an attorney read the agreement before signing it); *Rogers v. General Electric Co.*, 781 F.2d 452, n. 7 (5th Cir. 1986) (fact that plaintiff did not actually consult an attorney prior to executing release does not require court to find that waiver was not knowing).

Defendants admit that the terms of the Release were not negotiable. (*See* Mem. at 11). The other evidence in this case does not suggest that the atmosphere surrounding Plaintiff's execution of the Release was oppressive. S*ee Cirillo v. Arco Chemical Co.*, 862 F.2d 448, n.4 (3rd Cir. 1988) ("While the absence of such an opportunity [to negotiate a release] is not as strong an indicia that a release is unknowing or involuntary, to the extent such absence and other evidence suggest that the atmosphere surrounding the execution was oppressive, it is, of course a relevant consideration."). The fact that the terms of the Release were not negotiable does not, by itself, require a trial on whether Plaintiff's Release was knowing and voluntary. *See Cirillo*, 862 F.2d at 455 (concluding release was knowing and voluntary under totality of the circumstances analysis despite the lack of an opportunity to negotiate the terms of the release); *Bormann v. AT&T Communications*, 875 F.2d 399, n.1 (2d Cir. 1989) (lack of opportunity to negotiate terms of release alone does not require trial on voluntariness).

The final factor the Court must consider in assessing the totality of the circumstances is

whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law. *See Torrez v. Public Service Co. of New Mexico*, 908 F.2d 687, 690 (10th Cir. 1990). In this case, Defendants' retirement plan provides for the payment of special early retirement benefits on the condition that the employee satisfy several criteria, one of which requires that the employee execute a general release of claims in favor of the employer. (Mem., Undisputed Material Facts Nos. 19-20). Plaintiff has been receiving and continues to receive the special early retirement payments. (Mem., Undisputed Material Fact No. 21). Plaintiff does not argue otherwise. (*See* Resp.).

Finally, the Court notes that Plaintiff does not dispute that he carefully read the Release Agreement before he signed it and voluntarily entered into the Release Agreement. (Mem. in Support, Doc. No. 26, filed December 2, 2004, at 2, Undisputed Material Facts 3-4, 6; Response, Doc. No. 32, filed January 3, 2005, 1-3).

Having considered the totality of the circumstances, the Court concludes that the evidence does not present a material question of fact as to whether Plaintiff knowingly and voluntarily signed the Release. The Release executed by Plaintiff clearly and unambiguously released any claims Plaintiff had against Defendants. Moreover, the Release specifically mentioned that Title VII and ERISA claims were being released. While Plaintiff signed the Release the same day he received it, Plaintiff testified he carefully read the Release and understood that he had 45 days to consider the Release. There being no evidence that Plaintiff's education and business experience were below average, Plaintiff was sufficiently intelligent to understand the Release and should have known that the language "Employee agrees not to bring any suit or claim against the Company" meant all legal claims, including Title VII and ERISA claims. Although Defendants did not encourage Plaintiff to

seek the advice of an attorney, Plaintiff testified he knew he had the right to consult an attorney regarding the Release. Plaintiff does not dispute that the special early retirement benefits given to him by Defendants in exchange for the waiver exceeds the benefits to which he was already entitled. Finally, Plaintiff testified that he entered into the Release voluntarily. Therefore, the Court shall grant Defendants' Motion for Summary Judgment as to Plaintiff's Title VII Claims, (Doc. No. 48, filed September 12, 2005), and Defendants' Motion for Summary Judgment as to Plaintiff's ERISA Claims, (Doc. No. 49, filed September 12, 2005).

**IT IS SO ORDERED.**

_____

**MARTHA VAZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**